**Hayley I. Archer**, OSB No. 256868
hayley@beaconforjustice.com
**Talia Y. Guerriero**, OSB No. 115271
talia@beaconforjustice.com
BEACON EMPLOYMENT LAW
1000 SW Broadway, Suite 2130
Portland, OR 97205
T: 503-673-1388
F: 503-564-4689

**Of Attorneys for Plaintiff**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **NICOLE ALDARONDO MORALES,** an individual;<br><br>Plaintiff,<br><br>v.<br><br>**THE ASPEN GLOBAL CHANGE INSTITUTE, INC.,** a foreign nonprofit corporation;<br><br>Defendant. | CASE NO.: 3:26-cv-1925<br><br>COMPLAINT FOR UNLAWFUL EMPLOYMENT PRACTICES<br><br>PREGNANCY DISCRIMINATION, ORS 659A.147; SEX DISCRIMINATION, ORS 659A.030; OFLA INTERFERENCE, DISCRIMINATION, AND RETALIATION, ORS 659A.183 AND 657B.070.<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Nicole Aldarondo Morales alleges as follows:

## INTRODUCTION

1.

This is a case about a high-performing employee who worked hard toward a promised promotion that would never be realized. Nicole Aldarondo was a dedicated



**BEACON EMPLOYMENT LAW**
1000 SW Broadway, Suite 2130
Portland, Oregon 97205
Phone: 503-673-1388
Fax: 503-594-4689

employee who spent nearly half a decade building Aspen Global Change Institute's ("AGCI") financial infrastructure only to be terminated from the company because she disclosed her high-risk pregnancy. At the time Ms. Aldarondo announced her high-risk pregnancy in August 2025, she had recently been awarded AGCI's first-ever employee bonus, was actively administering a $30 million organizational budget, and had been given repeated assurances of a forthcoming promotion. Within weeks of her disclosure, those assurances evaporated. Not only was she excluded from meetings she had previously attended, she was demoted in the organizational chart and then denied the Finance Controller promotion she had effectively been working toward for months. In a formal performance review, her supervisor, Vice President Jerard, told her to use her maternity leave to "think about [her] future" at the company. Soon after, Executive Director Arnott told Ms. Aldarondo to stop asking about her career and focus on her pregnancy, despite his numerous pre-pregnancy promises of promotion.

Then, while Ms. Aldarondo was on protected parental leave caring for her newborn son, AGCI posted a job listing for a position that was materially identical to her job. Moreover, the public posting had an anticipated start date timed for her return from leave. When she asked Human Resources about the posting, AGCI summarily fired her.

## **NATURE OF THE ACTION**

2.

This is a case about employment discrimination and retaliation against a high-performing employee after she disclosed her high-risk pregnancy. Plaintiff brings this action for pregnancy discrimination, sex discrimination, protected leave interference and retaliation, and aiding or abetting unlawful employment practices. Plaintiff seeks economic damages, noneconomic damages, attorney fees, costs, interest, equitable relief, and other relief allowed by law.



**BEACON EMPLOYMENT LAW**
1000 SW Broadway, Suite 2130
Portland, Oregon 97205
Phone: 503-673-1388
Fax: 503-594-4689

As such, the Plaintiff alleges the following Complaint against Defendant:

**PARTIES AND JURISDICTION**

3.

Plaintiff Nicole Aldarondo Morales (“Plaintiff” or “Ms. Aldarondo”) is an individual residing in Washington County, Oregon.

4.

At all material times, Plaintiff worked remotely from Oregon for The Aspen Global Change Institute, Inc. (“AGCI”).

5.

Defendant The Aspen Global Change Institute, Inc. (“AGCI”), is a nonprofit corporation located in Colorado.

6.

At all material times, Defendant AGCI knowingly employed Plaintiff as a remote Oregon-based employee and controlled the material terms and conditions of Plaintiff's employment, including, but not limited to, Plaintiff’s job duties, reporting structure, compensation, benefits, leave, discipline, promotion opportunities, and termination.

7.

At all material times, Defendant AGCI regularly conducted business in Oregon by employing Oregon-based workers, including at least two employees based entirely in Oregon.

8.

At all material times, AGCI was an employer within the meaning of ORS 659A.

9.

This Court has diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds the sum of $75,000 and the matter is between citizens



**BEACON EMPLOYMENT LAW**
1000 SW Broadway, Suite 2130
Portland, Oregon 97205
Phone: 503-673-1388
Fax: 503-594-4689

of different states. Plaintiff also brings this declaratory judgment action under 28 U.S.C. section 2201 and Federal Rule of Civil Procedure 57.

10.

This Court has personal jurisdiction over Defendant AGCI because Defendant purposefully directed employment and staffing activities into Oregon and this action arising from those Oregon-directed activities. Defendant hired Ms. Aldarondo, an entirely Oregon-based employee, who performed services in Oregon that were authorized by Defendant. On at least one occasion, Defendant sent a supervisory employee to Oregon to work directly with Ms. Aldarondo. Defendant's actions and omissions caused injury to Ms. Aldarondo in Oregon, and her claims arise directly from Defendant's discriminatory misconduct and termination connected to her work in Oregon. Oregon therefore has specific personal jurisdiction over AGCI.

11.

Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims in this action occurred in the District of Oregon, Portland Division, and Defendant conducted regular and sustained business therein. Defendant directed employment decisions and communications to Plaintiff in Oregon, and Plaintiff suffered harm in Oregon as a direct result of Defendant's unlawful conduct.

**<u>FACTUAL ALLEGATIONS</u>**

12.

Defendant AGCI hired Ms. Aldarondo in August 2021 as a Finance and Grants Assistant. Over nearly half a decade, she distinguished herself as an exceptional performer, consistently earning positive annual performance reviews and repeated promises for promotion to reflect her role in the growing company.



**BEACON EMPLOYMENT LAW**
1000 SW Broadway, Suite 2130
Portland, Oregon 97205
Phone: 503-673-1388
Fax: 503-594-4689

13.

In June 2024, she completed a Master of Science in Business – Finance Analytics, which strengthened her accounting skills and prepared her for a position that requires expertise in addressing business finances using data analysis.

14.

In January 2025, Ms. Aldarondo's manager, then-Finance Director Alyson Wright, confirmed the plan to promote her with a new title within the calendar year.

15.

In early 2025, a major merger with Crux Alliance significantly increased Ms. Aldarondo's workload.

16.

In April 2025, Finance Director Wright departed from AGCI, and Ms. Aldarondo stepped in to assume responsibility for the Finance Department with minimal notice and no additional title, compensation, or role definition. In doing so, she became the primary point of contact for all financial matters in a company overseeing a large organizational budget.

17.

In recognition of Ms. Aldarondo's extraordinary performance during this period, Executive Director James Arnott awarded her a $5,000 bonus in June 2025. This was the first bonus for anyone in AGCI's history and assured her that her additional duties would evolve into a formal promotion.

18.

That same month, Ms. Aldarondo repeatedly asked Arnott to revisit her position description. Arnott stated that defining her role would be a key deliverable for the incoming Finance Director and reassured her it would happen by August 2025.



**BEACON EMPLOYMENT LAW**
1000 SW Broadway, Suite 2130
Portland, Oregon 97205
Phone: 503-673-1388
Fax: 503-594-4689

19.

In June 2025, AGCI hired Olya Jerard and onboarded her with the title of Vice President, not Director.

20.

Ms. Aldarondo participated in hiring VP Jerard and invested substantial time in training VP Jerard on AGCI's institutional knowledge and financial processes.

21.

On or around July 12, 2025, Ms. Aldarondo's financial authority was expanded.

22.

An organizational chart reflected that Ms. Aldarondo's duties fell under an "Accounting Manager" role that mirrored the work she was already performing.

23.

In or around August 2025, Ms. Aldarondo announced her pregnancy to ED Arnott, VP Jerard, and Human Resources ("HR") Representative, Lindy Alfaro, and disclosed that her pregnancy was classified as high-risk.

24.

On or around September 4, 2025, Ms. Aldarondo's treating physician at Legacy Maternal Fetal Medicine Emanuel provided a letter to AGCI confirming that Ms. Aldarondo was under care for a high-risk pregnancy and would have frequent medical appointments for the duration of her pregnancy.

25.

Ms. Aldarondo provided AGCI with medical documentation confirming her high-risk pregnancy and need for ongoing prenatal care, and she communicated her need for a low-stress work environment for the duration of her pregnancy.



**BEACON EMPLOYMENT LAW**
1000 SW Broadway, Suite 2130
Portland, Oregon 97205
Phone: 503-673-1388
Fax: 503-594-4689

26.

On or around September 8, 2025, HR Alfaro told Ms. Aldarondo that VP Jerard was "super supportive" and "100% wants to do whatever we can do to make an adjusted schedule and workload" for Ms. Aldarondo.

27.

Instead, VP Jerard began pressuring Ms. Aldarondo to perform low-level administrative tasks, while Ms. Aldarondo was simultaneously managing the annual financial audit and the full spectrum of senior responsibilities she had been carrying since April.

28.

HR Alfaro and an AGCI-contracted accountant offered to help lighten the burden of Ms. Aldarondo's lower-level work, but VP Jerard rejected those offers and kept the tasks assigned to Ms. Aldarondo.

29.

Around the same time, Ms. Aldarondo was excluded from budgeting meetings and discussions in which she had previously been included, causing her to feel demeaned and demoted.

30.

She communicated the resulting stress to her treating physician, who warned her about the impact of job-induced stress on her high-risk pregnancy and recommended mental health counseling to help her cope. On or around September 26, 2025, Ms. Aldarondo was diagnosed with adjustment disorder with anxious mood and was advised to practice strategies for identifying and interrupting anxiety spirals.



**BEACON EMPLOYMENT LAW**
1000 SW Broadway, Suite 2130
Portland, Oregon 97205
Phone: 503-673-1388
Fax: 503-594-4689

31.

In October 2025, VP Jerard announced that a Finance Controller position was being created and filled by a consultant that Ms. Aldarondo had previously trained on AGCI's chart of accounts, internal financial systems, and accounting workflows.

32.

The Finance Controller role was functionally equivalent to most of the senior-level responsibilities Ms. Aldarondo had been performing, but AGCI did not give her notice or an opportunity to apply for the position she had effectively been performing.

33.

In November 2025, AGCI informed Ms. Aldarondo that she would report to the new Finance Controller starting in 2026, lowering her position in the organizational hierarchy.

34.

On or around November 13, 2025, during Ms. Aldarondo's annual performance review, VP Jerard focused on minor procedural issues while disregarding Ms. Aldarondo's extraordinary contributions over the preceding year. In that same review, VP Jerard stated that she was counting on Ms. Aldarondo to help set the team up for success with transition notes and job aids. Additionally, VP Jerard shared that she looked forward to seeing Ms. Aldarondo leverage her strengths and professional interests in service of the team's goals and organizational mission.

35.

VP Jerard's November 2025 performance review also noted that Ms. Aldarondo's institutional knowledge "has been and will continue to be an asset" and that Ms. Aldarondo would "continue to contribute meaningfully and grow as a finance and operations professional."



**BEACON EMPLOYMENT LAW**
1000 SW Broadway, Suite 2130
Portland, Oregon 97205
Phone: 503-673-1388
Fax: 503-594-4689

36.

In the November 2025 performance review, VP Jerard told Ms. Aldarondo, "During your maternity leave you should take the time to think about your long-term future at AGCI."

37.

In December 2025, when Ms. Aldarondo tried to discuss her long-promised promotion with ED Arnott, he insisted she should "focus on the pregnancy" instead.

38.

The new Controller was onboarded in December 2025 with a $155,000 salary, and Ms. Aldarondo trained her on all of AGCI's critical systems and processes.

39.

Ms. Aldarondo's son was born on December 17, 2025, and she began taking leave under Paid Leave Oregon ("PLO") and the Oregon Family Leave Act ("OFLA") on or around January 2, 2026.

40.

On or around December 18, 2025, AGCI issued Ms. Aldarondo a formal raise to $74,000 for 2026.

41.

In February 2026, while on protected parental leave caring for her newborn, Ms. Aldarondo discovered that AGCI had publicly posted a job announcement for an "Accountant" position.

42.

The Accountant position posting described duties materially identical to her own position combined with the Finance Controller duties she performed until AGCI stripped them from her in October 2025. Critically, the posting listed an anticipated start date of



**BEACON EMPLOYMENT LAW**
1000 SW Broadway, Suite 2130
Portland, Oregon 97205
Phone: 503-673-1388
Fax: 503-594-4689

April/May 2026 – the same timeframe that Ms. Aldarondo was scheduled to return from leave.

43.

During 2025, Ms. Aldarondo met or exceeded the requirements listed in the Accountant job description.

44.

Although Ms. Aldarondo held an Assistant title, the work she was actually performing exceeded her formal title and was functionally Accountant-level work.

45.

The Accountant position would report directly to the Finance Controller, which is the same position as Ms. Aldarondo's in the organizational hierarchy.

46.

On or around March 19, 2026, Ms. Aldarondo contacted HR about the Accountant job posting to ask whether they planned to hire an additional employee or if she was meant to apply.

47.

On or around March 20, 2026, AGCI sent Ms. Aldarondo a written follow-up stating that her position was eliminated, and alleged that the decision to eliminate the Finance and Grants Assistant role had been made "at the end of last July." AGCI added, "[o]nce we learned of your pregnancy in August and your need for a stress-free environment at work, we chose to delay notifying you of the decision."

48.

Ms. Aldarondo finished her protected leave and, after years of dedicated and high-value service, her final day at AGCI was May 1, 2026.



**BEACON EMPLOYMENT LAW**
1000 SW Broadway, Suite 2130
Portland, Oregon 97205
Phone: 503-673-1388
Fax: 503-594-4689

49.

As a result of Defendant's discriminatory and retaliatory treatment, Plaintiff has suffered significant and ongoing emotional distress.

## FIRST CLAIM FOR RELIEF

### Pregnancy Discrimination

### ORS § 659A.147

50.

Plaintiff re-alleges and incorporates by reference the facts and allegations set forth in the preceding paragraphs.

51.

During her employment at Defendant AGCI, Plaintiff was pregnant and had known limitations related to her pregnancy and related medical conditions.

52.

In August 2025, Plaintiff disclosed her high-risk pregnancy to Arnott, Jerard, and HR Alfaro. In September 2025 she informed Defendant that her condition required frequent medical appointments and a low-stress work environment for the remainder of the pregnancy.

53.

Before learning of Plaintiff's pregnancy, Defendant treated her as a high-performing employee on a promotion track: she was awarded a performance bonus, assured her additional duties would become a formal promotion, and told the incoming finance leader would address her position description.

54.

After Defendant learned of Plaintiff's pregnancy, it decided not to promote her into a higher-level finance role that reflected the work she was performing.



**BEACON EMPLOYMENT LAW**
1000 SW Broadway, Suite 2130
Portland, Oregon 97205
Phone: 503-673-1388
Fax: 503-594-4689

55.

Defendant's decision not to promote Plaintiff was made because of, or substantially motivated by, her pregnancy, childbirth, pregnancy-related medical conditions, and anticipated leave.

56.

In addition, Defendant later asserted that, after learning of Plaintiff's pregnancy, it deliberately delayed telling her that it allegedly had decided to eliminate her position. Defendant's stated explanation of the position elimination was pretextual or, at minimum, shows that Defendant intentionally treated Plaintiff differently because of her pregnancy by withholding the alleged elimination decision.

57.

Defendant's decision to withhold material information about Plaintiff's position because of her pregnancy and pregnancy-related medical conditions was itself an adverse action and discriminatory treatment based on pregnancy.

58.

Defendant's conduct violated ORS 659A.147 by unlawfully discriminating against Plaintiff on the basis of her pregnancy, including taking adverse action and denying her employment opportunities.

59.

Defendant's unlawful conduct directly and proximately caused Plaintiff economic loss by causing Plaintiff to suffer lost wages, out-of-pocket costs, and accrued interest, in an amount to be determined at trial and estimated to be $250,000.

60.

Defendant's unlawful conduct directly and proximately caused Plaintiff noneconomic loss, including emotional distress, humiliation, anxiety, mental stress, and



**BEACON EMPLOYMENT LAW**
1000 SW Broadway, Suite 2130
Portland, Oregon 97205
Phone: 503-673-1388
Fax: 503-594-4689

loss of enjoyment of life, in an amount to be determined at trial and estimated to be $950,000.

61.

Pursuant to ORS 20.107 and ORS 659A.885, Plaintiff is entitled to recover actual damages, equitable relief, reasonable attorney fees and costs, prejudgment and post-judgment interest, and any other relief allowed by law.

62.

Defendant AGCI acted with malice and/or demonstrated a reckless and outrageous indifference to a highly unreasonable risk of harm and acted with a conscious indifference to the health, safety, and welfare of Plaintiff. Accordingly, Plaintiff reserves the right to seek punitive damages pursuant to ORS 31.275 and 31.730.

**SECOND CLAIM FOR RELIEF**

**Sex Discrimination**

**ORS § 659A.030**

63.

Plaintiff re-alleges and incorporates by reference the facts and allegations set forth in the prior paragraphs of this complaint.

64.

At all material times, Plaintiff was a member of a protected class based on sex, including pregnancy, childbirth, and/or related medical conditions.

65.

Plaintiff was qualified for her position and for the higher-level finance roles and responsibilities she had been performing for Defendant.



**BEACON EMPLOYMENT LAW**
1000 SW Broadway, Suite 2130
Portland, Oregon 97205
Phone: 503-673-1388
Fax: 503-594-4689

66.

Before learning of Plaintiff's pregnancy, Defendant repeatedly represented that her expanded financial duties would lead to a promotion or role review. In June 2025, Plaintiff requested a role review and was reassured she would receive one in August 2025.

67.

After Defendant learned of Plaintiff's pregnancy, it decided not to promote her and denied her the opportunity to apply for internal finance promotions.

68.

Defendant discriminated against Plaintiff because of sex, including pregnancy, childbirth, and related medical conditions, by failing to promote her, denying her employment opportunities, and terminating her employment.

69.

Defendant also discriminated against Plaintiff by delaying notice of her alleged position elimination because she was pregnant. Defendant's stated explanation of the position elimination was pretextual or, at minimum, shows that Defendant intentionally treated Plaintiff differently because of her pregnancy by withholding the alleged elimination decision.

70.

Defendant's conduct violated ORS 659A.030 by subjecting Plaintiff to adverse treatment in substantial part because of her sex by denying her employment opportunities and terminating her employment.

71.

Defendant's unlawful conduct directly and proximately caused Plaintiff economic loss by causing Plaintiff to suffer lost wages, out-of-pocket costs, and accrued interest, in an amount to be determined at trial and estimated to be $250,000.



**BEACON EMPLOYMENT LAW**
1000 SW Broadway, Suite 2130
Portland, Oregon 97205
Phone: 503-673-1388
Fax: 503-594-4689

72.

Defendant's unlawful conduct directly and proximately caused Plaintiff noneconomic loss, including emotional distress, humiliation, anxiety, mental stress, and loss of enjoyment of life, in an amount to be determined at trial and estimated to be $950,000.

73.

Pursuant to ORS 20.107 and ORS 659A.885, Plaintiff is entitled to recover actual damages, equitable relief, reasonable attorney fees and costs, prejudgment and post-judgment interest, and any other relief allowed by law.

74.

Defendant acted with malice and/or demonstrated a reckless and outrageous indifference to a highly unreasonable risk of harm and acted with a conscious indifference to the health, safety, and welfare of Plaintiff. Accordingly, Plaintiff reserves the right to seek punitive damages pursuant to ORS 31.275 and 31.730.

**THIRD CLAIM FOR RELIEF**

**Protected Family Leave Interference and Retaliation**

**ORS § 659A.183 & ORS § 657B.070**

75.

Plaintiff re-alleges and incorporates by reference the facts and allegations set forth in the prior paragraphs of this complaint.

76.

During her employment at Defendant, Plaintiff was eligible for and used protected family, medical, parental, pregnancy-related, and/or caregiving leave under Oregon law, including Oregon Family Leave Act and Paid Leave Oregon.



**BEACON EMPLOYMENT LAW**
1000 SW Broadway, Suite 2130
Portland, Oregon 97205
Phone: 503-673-1388
Fax: 503-594-4689

77.

Plaintiff's son was born on or around December 17, 2025, and she began taking protected leave on or around January 2, 2026.

78.

In February 2026, while she was still on protected leave, she discovered Defendant had publicly posted an open position materially identical to her own. On March 20, 2026, when Plaintiff asked AGCI about the posting, AGCI summarily terminated her employment.

79.

Defendant violated ORS 659A.183 and 657B.070 by taking adverse employment actions against Plaintiff in violation of Plaintiff's protected rights, including, but not limited to, terminating Plaintiff's employment due to Plaintiff's medical condition and/or Plaintiff's use of medical leave.

80.

To the extent that Defendant contends it had already decided to eliminate Plaintiff's position before her leave, AGCI delayed notifying her of that alleged decision because of her pregnancy. Accordingly, Defendant interfered with Plaintiff's medical leave by withholding material information about her employment status while she planned for and used protected pregnancy-related and parental leave.

81.

Defendant's adverse employment actions were substantially motivated by Plaintiff's medical condition and/or Plaintiff's use of medical leave and constitute unlawful interference, retaliation, and discrimination.

82.

Defendant's conduct violated ORS 659A.183 and ORS 657B.070.



**BEACON EMPLOYMENT LAW**
1000 SW Broadway, Suite 2130
Portland, Oregon 97205
Phone: 503-673-1388
Fax: 503-594-4689

83.

Defendant's unlawful conduct directly and proximately caused Plaintiff economic loss by causing Plaintiff to suffer lost wages, out-of-pocket costs, and accrued interest, in an amount to be determined at trial and estimated to be $250,000.

84.

Defendant's unlawful conduct directly and proximately caused Plaintiff noneconomic loss, including emotional distress, humiliation, anxiety, mental stress, and loss of enjoyment of life, in an amount to be determined at trial and estimated to be $950,000.

85.

Pursuant to ORS 20.107 and ORS 659A.885, Plaintiff is entitled to recover actual damages, equitable relief, reasonable attorney fees and costs, prejudgment and post-judgment interest, and any other relief allowed by law.

86.

Defendant acted with malice and/or demonstrated a reckless and outrageous indifference to a highly unreasonable risk of harm and acted with a conscious indifference to the health, safety, and welfare of Plaintiff. Accordingly, Plaintiff reserves the right to seek punitive damages pursuant to ORS 31.275 and 31.730.

**JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all claims and issues to the extent allowed under the law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for her costs and disbursements incurred herein and for the following in accordance with the proof at trial:



**BEACON EMPLOYMENT LAW**
1000 SW Broadway, Suite 2130
Portland, Oregon 97205
Phone: 503-673-1388
Fax: 503-594-4689

1. Economic damages as alleged herein,
2. Non-Economic damages as alleged herein,
3. Penalties as alleged herein,
4. Costs and attorney fees as alleged herein,
5. Prejudgment and post-judgment interest as appropriate and allowed by law,
6. Plaintiff reserves the right to seek punitive damages upon a motion; and
7. Any other relief the court deems proper.

DATED: September 16, 2026.

**BEACON EMPLOYMENT LAW**

By: *s/Hayley I. Archer*
Hayley I. Archer, OSB No. 256868
Hayley@beaconforjustice.com
Talia Y. Guerriero, OSB No. 115271
Talia@beaconforjustice.com
*Of Attorneys for Plaintiff*



**BEACON EMPLOYMENT LAW**
1000 SW Broadway, Suite 2130
Portland, Oregon 97205
Phone: 503-673-1388
Fax: 503-594-4689